Russell C. REISIG, d/b/a Russell's
Excavation and Construction,
Appellant (Plaintiff),

v.

UNION INSURANCE COMPANY, a Ne-
braska corporation, and Manville
Claims Service, a Wyoming corporation,
Appellees (Defendants).

No. 93–57.

Supreme Court of Wyoming.

March 18, 1994.

Glenn E. Smith, Glenn E. Smith & Associates, Cheyenne, for appellant.

Richard Rideout, Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The issue in this case is whether Union Insurance Company (Union) committed a breach of its duty to defend Russell C. Reisig, d/b/a Russell's Excavation and Construction, (Reisig) in accordance with the terms of an insurance policy. The district court ruled the claims asserted against Reisig by third parties were not covered by the insurance policy, and Union had not committed a breach of its duty to defend Reisig. We are satisfied the issue is controlled by our holding in *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094 (Wyo.1993), and the Order Granting Defendant's Motion for Summary Judgment entered in the trial court should be affirmed.

In his Brief of the Appellant, Reisig defines the issues as follows:

I. In holding that Union had no duty to defend, did the district court improperly utilize extrinsic evidence, base Union's duty to defend on whether it had a duty to pay, or determine facts which have yet to be adjudicated in the underlying action?

II. Does the third party complaint filed by Rocky Mountain against Reisig allege a *potential* "occurrence" under the policy of insurance issued to Union by Reisig?

III. Does the third party complaint filed by Rocky Mountain against Reisig allege sufficient facts to warrant a refusal by Union to defend on the basis of Union's "care, custody or control" exclusion?

IV. If a duty to defend is not created by the allegations of the Rocky Mountain complaint, did Union know or should Union have known of facts outside of the complaint which would establish a potential for coverage and, if so, does such extrinsic evidence create a duty to defend which would not exist based solely on the allegations of the complaint?

V. Did Reisig have a duty to search the public records for the lien filed by Rocky Mountain and, if so, was the damage complained of by Rocky Mountain intended or expected by Reisig because it was the natural, ordinary and logical result of his failure to do so?

VI. Are there genuine issues of material fact which preclude the district court from entering summary judgment in favor of Union? [1]

Union compiles the issues in this way:

I. Whether the district court erred in granting summary judgment to the Appellant.

A. Whether the district court erred in holding the Appellee did not breach the contract of insurance with the Appellant.

1. Whether the district court erred in determining that there was no "occurrence" triggering coverage.

2. Whether the district court erred in determining that there was no coverage as the care, custody and control exclusion applied.

II. Whether there are genuine or material issues of fact precluding summary judgment.

The underlying events resulting in this appeal go back to September 22, 1980 when the District Court of the First Judicial District in and for Laramie County entered an order directing Sidney and Florence Kornegay (Kornegays) to remove or destroy certain accumulated junk and structures in order to abate a nuisance which was identified as the Kornegay's junkyard. Subsequently, the district court entered two orders finding the Kornegays in contempt for their refusal to abide by the order entered in 1980. The second of those orders, issued on April 6, 1987, also required Laramie County to develop a plan to bring property into compliance with the order entered in 1980, and it gave the Kornegays sixty days to remove any property they wanted to protect from the County's plan for restoring Tracts 10 and 23 of Artesian Tracts in Laramie County.

After that order was entered, the Kornegays applied for, and obtained, a loan from Rocky Mountain Federal Savings & Loan (Rocky Mountain) in the amount of $8,012. The loan was secured by two pieces of heavy equipment, a Fiat Alias [Allis] Tractor Loader (Fiat loader) and a Michigan Rubber Tire Loader (Michigan loader). Rocky Mountain filed a financing statement covering both loaders in the office of the Laramie County Clerk; once on April 22, 1987 and again, on November 23, 1987. Both pieces of equipment were located on the property that was the subject of the 1980 and 1987 orders entered in the district court.

As a response to the plan of Laramie County, Reisig submitted a proposal to clean up the Kornegays' property and to bring it into compliance with the terms and conditions of the orders of the court. The court approved Reisig's plan in an Order Approving Schedule and Plan entered on March 9, 1988. Laramie County then made a Contract for Services with Reisig for the removal of the junk and debris from the Kornegays' property, including all salvage rights. Reisig began performance of the contract in March of 1988, and it was completed in September of 1989.

Pursuant to a requirement of the Contract for Services, Reisig obtained a Commercial General Liability (CGL) policy from Union with the period of insurance coverage running from December 30, 1988 to December 30, 1989. In August of 1988, Reisig, without any actual knowledge of the security agreement, removed the Michigan loader, which the Kornegays had pledged as security to Rocky Mountain, from the Kornegays' junkyard. Reisig certainly had constructive knowledge of the security interest at that time because the financing statement had been appropriately filed.

On September 2, 1988, the Kornegays sent Reisig a letter, through their attorney, demanding the return of the personal property listed on an attachment to the letter which included the Michigan and Fiat loaders. Subsequently, Reisig sold the Michigan loader to a third party in either August or September of 1989. In the summer of 1989, Reisig repaired the Fiat loader, used it in the cleanup of the Kornegays' property, and then removed it to his place of business in Morrill,

---

**1.** The appellant's reply brief was not timely filed according to WYO.R.APP.P. 7.06(c). Accordingly, the brief was stricken, and it was not considered in connection with this appeal. We deem it important that members of our bar understand the Rules of Appellate Procedure are significant and will be enforced whenever appropriate.

Nebraska. Reisig never did conduct a lien or title search with respect to the loaders or any other property in dispute.

On May 5, 1989, the Kornegays were in default on their promissory note and, on March 13, 1990, Rocky Mountain filed an action against the Kornegays to recover on the promissory note and against Reisig for converting to his own use collateral covered by the financing statement. Reisig notified Union of the action brought by Rocky Mountain, and Union advised Reisig, on March 13, 1991, that the Rocky Mountain claim was not covered by its policy, and it had no duty to defend the action. Specifically, Union told Reisig (1) there was no occurrence, (2) there was no property damage, and (3) there was a care, custody, and control exclusion, all of which resulted in there being no coverage under its CGL policy. On November 18, 1991, Reisig brought this action against Union, alleging breach of the insurance contract, bad faith, and negligence on the part of Union and seeking recovery of attorney fees. The district court granted a motion for summary judgment filed by Union, ruling there was no duty to defend Reisig in the third-party lawsuit and, therefore, there had been no breach of the contract by Union. This appeal is taken from that order.

In *First Wyoming Bank,* we set forth the pertinent criteria in arriving at a determination of a duty to defend on the part of an insurance company. We said:

> Regarding the duty to defend, we have held that the duty of an insurer to defend a claim is broader than the duty of the insurer to indemnify. *Aetna Ins. Co. v. Lythgoe,* 618 P.2d 1057, 1061 (Wyo.1980) (*citing Lanoue v. Fireman's Fund American Ins. Cos.,* 278 N.W.2d 49 (Minn.1979); *Boston Ins. Co. v. Maddux Well Serv.,* 459 P.2d 777 (Wyo.1967)). Analysis of the duty to defend is not made based on the ultimate liability of the insurer to indemnify the insured or on the basis of whether the underlying action is groundless or unsuccessful. *Lythgoe,* 618 P.2d at 1061 (*citing Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 240 A.2d 397 (1968); *Burger v. Continental Nat'l American Group,* 441 F.2d 1293 (6th Cir.1971)). Instead, we an-

alyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon. *Lythgoe,* 618 P.2d at 1061 n. 2. *See also Garvis v. Employers Mut. Casualty Co.,* 497 N.W.2d 254, 258 (Minn.1993); *County of Columbia v. Continental Ins. Co.,* 189 A.D.2d 391, 595 N.Y.S.2d 988, 990 (1993).

*First Wyoming Bank,* 860 P.2d at 1097.

The analysis of the facts alleged in the complaint upon which the claim is based is undertaken in the light of the language of the insurance policy. In order to determine whether Union owed a duty to defend Reisig in the litigation instituted by Rocky Mountain, we must compare the terms of the insurance policy with the allegations set forth in the complaint filed by Rocky Mountain.

The CGL policy issued by Union to Reisig states, in pertinent part (emphasis added):

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I—COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. But:

\* \* \* \* \* \*

c. "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur

at the time of the "occurrence" that caused it.

\* \* \* \* \* \*

SECTION V—DEFINITIONS

\* \* \* \* \* \*

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \* \*

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

The language of the CGL policy is clear and unambiguous in defining an occurrence and the nature of the losses that are to be covered.

With this language of the insurance policy before us, we examine the pertinent allegations in the Complaint filed by Rocky Mountain in which it alleges conversion. These are:

### COUNT II

8. At the time Rocky Mountain made its loan to the Kornegays it took a security interest in the following described collateral:

One M12–G Fiat Alias Tractor Loader # 96Y02308

One Michigan M175 Rubber Tire Loader # 25328

\* \* \* \* \* \*

9. Russell Reisig was hired by the County of Laramie to remove all salvage and junk material from property owned by the Kornegays South of Cheyenne.

10. In the course of performing the cleaning up of the Kornegay property, Russell Reisig took possession of the heavy equipment described in paragraph 8 above.

11. Russell Reisig took possession of the above described heavy equipment subject to the outstanding security interest of Rocky Mountain.

12. Upon information and belief Rocky Mountain alleges that Russell Reisig has sold one of the pieces of heavy equipment and has retained possession of the other.

13. Russell Reisig has converted Rocky Mountain's collateral for the Kornegay loan and Rocky Mountain has been damaged by this conversion to the extent of the collateral's value. Rocky Mountain has been further damaged to the extent of the attorney's fees and collection costs incurred in attempting to recover the collateral.

WHEREFORE, Plaintiff prays for judgment as follows:

\* \* \* \* \* \*

2. A Judgment against Russell Reisig in the amount of $8,940.59 together with interest thereon at the rate specified in the Note or in the alternative a Judgment in an amount equal to the fair market value of the collateral converted by Russell Reisig together with all attorney fees and collection costs incurred by Plaintiff.

The only claim asserted by Rocky Mountain against Reisig is for conversion of the loaders in which it held a security interest. Reisig's claim against Union is premised upon the breach of its contract imposing upon it a duty to defend Reisig. The contractual language that provides coverage to Reisig under Union's CGL policy is quoted above. Reisig asserts many issues in presenting his argument, but we are satisfied the case is resolved by addressing only whether conversion, which is an intentional tort, is to be considered an "accident" as defined by the policy and, therefore, a covered "occurrence."

In determining the question of whether the intentional tort of conversion can be considered an "accident," we look only to the allegations of the Complaint filed by Rocky Mountain to see if there is alleged a loss "caused by an 'occurrence'" as required by the CGL policy, which incorporates the term "accident" in defining "occurrence." We previously have defined "accident" in this way:

The word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any hu-

man agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; * * * chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops * * *.

*Wright v. Wyoming State Training Sch.*, 71 Wyo. 173, 255 P.2d 211, 218 (1953).

We also have said that "[c]onversion is defined as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith." *Satterfield v. Sunny Day Resources, Inc.*, 581 P.2d 1386, 1388 (Wyo.1978), *cert. denied*, 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979) (*quoting Western Nat'l Bank of Casper v. Harrison*, 577 P.2d 635, 640 (Wyo. 1978)). In another case, addressing whether a conversion had occurred, we said that "[w]hile an intent to convert is necessary, that intent need not be wrongful." *Seay v. Vialpando*, 567 P.2d 285, 289 (Wyo.1977). "Although some notice of ownership may be necessary, good faith on the part of a defendant or ignorance of the owner's rights does not avoid the consequences of an unauthorized act constituting conversion." *Seay*, 567 P.2d at 289. In a sister state, this pertinent language has been invoked: "The act constituting 'conversion' must be an intentional act, but it does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Bader v. Cerri*, 96 Nev. 352, 609 P.2d 314, 317 n. 1 (1980). In *First Wyoming Bank*, 860 P.2d 1094, 1100, we also said, relying upon *Dykstra v. Foremost Ins. Co.*, 14 Cal.App.4th 361, 17 Cal.Rptr.2d 543, 545 (1993) (*quoting Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 846, 13 Cal. Rptr.2d 318, 328 (1992)), " 'it is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and therefore, are not covered under a CGL policy [citations].' " We are satisfied one who accomplishes a conversion is answerable to the owner without regard to his intention,

his care, or his well-founded belief that his tortious act was right.

It is clear that nowhere in its Complaint does Rocky Mountain allege any loss "caused by an 'occurrence' " as the CGL policy language requires. Any element of "accident" is completely missing from the claim. The record demonstrates Reisig did perform distinct acts of dominion and control that deprived the Kornegays of their property when he removed and sold the Michigan loader and used, and then removed, the Fiat loader. Rocky Mountain's interest under its security agreement was an intangible property right that became a tangible right to dominion and control when the Kornegays defaulted on their loan with Rocky Mountain. Reisig's conversion of the two loaders resulted in the loss by Rocky Mountain of its right to dominion and control.

There is no question that Reisig's acts were intentional, without regard to the wrongful nature of that intent. The intentional act makes it impossible to define the conduct as an "accident," and it, therefore, is not an "occurrence" covered by the policy. The Arkansas Supreme Court has held that an allegation of conversion of soy beans did not result in a claim of an "accident" as defined by the standard form policy of general liability insurance. *Proctor Seed & Feed Co., Inc. v. Hartford Accident and Indem. Co.*, 253 Ark. 1105, 491 S.W.2d 62 (1973). We think the analysis by the Arkansas Supreme Court is not only correct, but is highly persuasive.

We deem it important to comment upon public policy concerns arising out of claims of insurance coverage in civil actions for conversion. If the insured could demand that his insurer defend a conversion action, casual conversion of another's property might be approached with less trepidation. The insured would not necessarily be risking much because the insurance company would have to pay the costs of defense and, ultimately, the property would simply have to be returned. It is possible an insured might even seek defense of a criminal action for conversion. Sound public policy demands insurance companies, and ultimately others who pay premiums to those companies, be free from

any requirement to defend a claim of conversion of property by the insured.

We are satisfied there are no genuine issues of material fact in this case. As a matter of law, Union had no duty to defend Reisig against Rocky Mountain's claim for conversion because Rocky Mountain's complaint did not allege an "occurrence" as required by the clear language of the CGL policy Union had issued. The Order Granting Defendant's Motion for Summary Judgment entered in the district court is affirmed.