2002 WY 60

**Glenda H. MATLACK, Appellant (Defendant/Counterclaim Plaintiff),**

v.

**MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, a Wyoming corporation, Appellee (Plaintiff/Counterclaim Defendant).**

No. 01–42.

Supreme Court of Wyoming.

April 15, 2002.

C. John Cotton, Gillette, WY, Representing Appellant.

S.B. Freeman, III of Bormuth & Freeman, LC, Cody, WY, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Glenda Matlack sold land adjoining her home to Susan Moore, and a dispute over the ownership of a water well on the boundary between their properties resulted. Ms. Moore took matters into her own hands and pulled the well casing onto her property, thereby damaging Ms. Matlack's property. When Ms. Matlack sued, Ms. Moore made a claim under her homeowner's insurance policy. Ms. Moore's insurer refused coverage for her intentional acts. Ultimately, the two neighbors settled their dispute by assigning Ms. Moore's claims against her insurer to Ms. Matlack. The trial court granted summary judgment for the insurer on the breach-of-contract and bad faith claims because the policy provided no coverage for intentional acts. We affirm.

## ISSUES

[¶ 2] Ms. Matlack presents the following issues for our review:

Issue No. 1: Did the lower court err in holding that there was no duty to defend the Original Complaint, which included claims for trespass, wrongful damage to personal property and real property, and negligent infliction of emotional distress?

Issue No. 2: Did the lower court err in holding that, as a matter of law, the conduct of the insured was intentional, and that there was no occurrence under the policy?

Issue No. 3: Did the lower court err in holding that there was no duty to defend the Amended Complaint?

Issue No. 4: Did the lower court err in its determination regarding bad faith?

Mountain West Farm Bureau Mutual Insurance Company phrases the issues as:

1. Whether the District Court erred in determining that the insurance policy did not provide coverage for the judgment entered by the District Court in accordance with the stipulated agreement of the parties in the underlying case?

2. Whether the District Court erred in its determination that the Appellee did not breach its duty to defend the original complaint filed in the underlying case?

3. Whether the District Court erred in its determination that the Appellee did not breach its duty to defend the amended complaint filed in the underlying case?

4. Whether the District Court erred in its determination that the Appellee did not breach its covenant of good faith and fair dealing to its insured?

In her reply brief, Ms. Matlack sets out these additional issues:

Issue No. 1: Do allegations and/or findings of punitive damages automatically invoke the intentional act exclusion?

Issue No. 2: Given the record in this case, is MWFB's position regarding the duty to defend and coverage contrary to Wyoming law?

Issue No. 3: Does MWFB concede the application of *INA v. Spangler*, 881 F.Supp. 539 (D.Wyo.1995)?

## FACTS

[¶ 3] In 1994, Ms. Matlack sold to Ms. Moore one of two tracts she owned in a subdivision in Campbell County. At the time of the sale, one common water well located

"almost precisely" on the boundary served both tracts. The parties agreed to share in the maintenance and operational costs of the well. Neither the agreement nor the warranty deed mentioned conveyance of the well to Ms. Moore. After the sale, the parties began haggling over ownership and operation of the well. Both parties sought to drag the state engineer's office into the fray which resulted in each of them receiving a certificate of title from that office at different times. After becoming aware of the parties' dispute, the state engineer's office bowed out claiming it was a civil matter to be resolved by the courts. Negotiations between the parties ensued with both parties being represented by counsel. Ms. Moore ultimately notified Ms. Matlack of her intent to physically hook on to the well casing and pull it onto her own property. Not surprisingly, Ms. Matlack responded by denying Ms. Moore permission to trespass onto her property to accomplish the task. Undaunted by her neighbor's position, Ms. Moore plowed ahead, started up her backhoe, dug out around the well, hooked on to the casing, and pulled it in her direction. None of these facts were disputed.

[¶ 4] Ms. Matlack alleged damages including disconnection of her home from the well, damage to the integrity of the well casing, the cost of drilling a replacement well, and emotional distress. She filed the predictable complaint claiming trespass, wrongful damage to and or conversion of personal property, wrongful taking of and or damage to real property, negligent infliction of emotion distress, intentional infliction of emotional distress, civil conspiracy, and punitive damages. Ms. Moore, faced with the consequences of her action, tendered the matter to her insurance carrier, Mountain West Farm Bureau Mutual Insurance Company (Mountain West), under her homeowner's policy. Mountain West responded within days of receiving the claim by denying both coverage and any duty to defend under the circumstances alleged in the complaint which in its opinion constituted intentional acts. Eight and a half months later, Ms. Matlack amended her complaint by adding a cause of action entitled "negligence," relying on the exact same facts. The trial court issued a decision letter granting summary judgment in Ms. Moore's favor on all claims except negligence, trespass, and punitive damages. Ms. Moore's counsel provided the amended complaint, the summary judgment decision letter, and a letter from Ms. Matlack's attorney offering to settle for the $100,000 policy limits to the insurer. Mountain West claimed it did not receive the information for several months. Upon review of the amended complaint, which now claimed negligence, Mountain West agreed to provide a defense but reserved its right to claim no coverage existed for damage cause by Ms. Moore's intentional acts. Facing trial on the remaining claims, Ms. Moore and Ms. Matlack settled their differences by stipulating to a judgment against Ms. Moore for $110,678.11, which included $19,763.95 for punitive damages, an assignment to Ms. Matlack of Ms. Moore's rights and claims against her insurer, and an agreement the judgment would only be satisfied through any recovery from the insurer.

[¶ 5] Mountain West filed a declaratory judgment action against Ms. Matlack, seeking a determination that the policy did not provide coverage for the stipulated damages. Ms. Matlack counterclaimed for breach of contract for failure to defend and provide coverage and for insurance bad faith. The trial count granted summary judgment in favor of Mountain West on coverage and all of Ms. Matlack's counterclaims. Ms. Matlack appealed.

## STANDARD OF REVIEW

[¶ 6]

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable

inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decisions on issues of law.

*Baker v. Pena*, 2001 WY 122, ¶ 6, 36 P.3d 602, ¶ 6 (Wyo.2001) (citations omitted).

## DISCUSSION

[¶ 7] The fundamental question presented in this appeal is whether the insurance policy issued by Mountain West to Ms. Moore provided coverage for damages resulting from these intentional acts. Section II of the policy describes the terms under which Mountain West contracted to provide coverage. Those terms unambiguously state Mountain West will pay up to the limit of liability in the policy for any property or bodily injury damages the insured is legally liable for as a result of an "occurrence" caused by the insured. The specific language of the policy provides in part:

### COVERAGE F—Liability

If a claim is made or suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the insured is legally liable;

. . . .

### COVERAGE M—Damage to Property of Others

We will pay for property damage to property of others caused by an insured, at replacement cost, up to $500 for any one occurrence.

By the clear language of the policy, coverage is limited to damages from an "occurrence." As set out in the definitions in the policy:

Occurrence means an unexpected and unintended accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage during the policy period. All bodily injury or property damage resulting from a com- mon cause shall be considered the result of one occurrence.

In addition to the clear terms limiting coverage to accidents, the policy specifically excluded coverage for intentional acts, actions arising out of an insured's violation of a criminal law, and punitive damages.

[¶ 8] We have found similar language unambiguous and discussed the definition of "accident" in this context. In *Reisig v. Union Insurance Company*, 870 P.2d 1066, 1069–70 (Wyo.1994), we stated:

In determining the question of whether the intentional tort of conversion can be considered an "accident," we look only to the allegations of the Complaint filed by Rocky Mountain to see if there is alleged a loss "caused by an 'occurrence' " as required by the CGL policy, which incorporates the term "accident" in defining "occurrence." We previously have defined "accident" in this way:

The word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; . . . chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops. . . .

*Wright v. Wyoming State Training Sch.*, 71 Wyo. 173, 255 P.2d 211, 218 (1953).

[¶ 9] It cannot be seriously argued Ms. Moore's action of hooking on to the well casing and pulling it toward her property, thereby causing damage, was accidental. In an attempt to put as good a light as possible on her actions, she claims she mistakenly believed she had a right to do so. That artful dodging is likewise unpersuasive. At the time, she was embroiled in negotiations with Ms. Matlack through counsel and fully aware of her neighbor's competing claim to the well. In fact, Ms. Matlack made it abun-

dantly clear Ms. Moore's actions would be considered a trespass.

[¶ 10] In *Reisig*, the contractor charged with conversion for taking and selling equipment in which a lender held a security interest made a similar argument claiming he was unaware of the lender's right to the equipment. In that case, we found no duty to defend when the complaint alleged such intentional acts as were clearly excluded from the definition of "accident." That holding relied on our earlier precedent in *First Wyoming Bank, N.A., Jackson Hole v. Continental Insurance Company*, 860 P.2d 1094 (Wyo. 1993), which likewise found a claim that relied upon breach of contract could not create a duty to defend on the insurer's part despite the fact the complaint contained a cause of action labeled "negligence." Our analysis must focus on the facts alleged in the complaint upon which the cause of action is founded, not on the label counsel applied to a particular cause of action. In *First Wyoming Bank*, the Robinsons and the Russells alleged the bank had agreed to make certain loans and later refused causing damages. Despite a claim for relief entitled "negligence," which alleged the bank acted negligently in making the representations regarding the loans, the obvious gravamen of the complaint was the bank's alleged failure to perform its contract with the Robinsons and the Russells. That breach of contract could not rationally be deemed an "occurrence" or "accident" within the unambiguous language of the insurance contract. Likewise, in this case, although counsel tried to craft the amended complaint to trigger coverage by adding a claim for relief entitled "negligence" claiming Ms. Moore negligently believed she owned the well, he could not avoid the obvious fact that Ms. Moore's actions were no accident. Ms. Matlack even admits in her brief that the amended complaint was "simply another method of stating what was stated in the original Complaint."

[¶ 11] As support for her argument that intentional acts based upon mistake are "occurrences" under the policy, Ms. Matlack relies upon *Parker v. Hartford Fire Insurance Co.*, 222 Va. 33, 278 S.E.2d 803 (1981), and *Lumber Insurance Companies, Inc. v.*

*Allen*, 820 F.Supp. 33 (D.N.H.1993), for the proposition that a trespass is an occurrence under the policy's language if no harm was intended. However, both cases involved unintentional trespasses where the insureds were completely unaware of the claims to the properties in question. Those facts bear no resemblance to this situation. In *Parker*, the insureds, whose deed contained no reference to a burial plot being reserved, began constructing a silo on the burial plot. Because the facts alleged in the complaint could support a judgment of an unintentional trespass which could be covered by the policy, the court found the insurer had a duty to defend the claim. Similarly, the insureds in *Allen* built a driveway under the mistaken belief they owned an easement allowing them to do so. Interpreting an insurance policy very similar to the one at issue in this case, the court found the meanings of "occurrence" and "accident" could potentially cover the insureds' unintentional trespass and, consequently, the insurer had a duty to defend. In determining whether the intentional act could constitute an accident, the *Allen* court cited a two-part test: (1) Was the act actually intended to cause the injury that resulted or (2) is the act so inherently injurious that it cannot be performed without causing the resulting injury? 820 F.Supp. at 34. The court concluded, if an insured mistakenly believes he has an owner's permission to enter the property, the first part of the test could be met in that no intent to cause injury would exist. It seems to follow that, if the insured mistakenly believes he owns the property, no injury would likewise be intended. However, that mistaken belief must have some basis in fact, and we believe it goes without saying that such belief must be held in good faith. A claim of mistaken belief cannot be sustained where parties are embroiled in an open and hostile dispute over ownership.

[¶ 12] Pursuant to the second part of the test, if an injury will certainly follow from the insured's conduct, his conduct will not be considered accidental even if he has no intention to injure. When this part of the test is applied to intentional but mistaken conduct, the issue becomes whether the facts support a belief that the conduct was authorized. If

authorized conduct does not injure and the facts support a belief that the conduct was authorized, injury is not certain to follow from the insured's acts. Thus, an insured's intentional but mistaken trespass or conversion also will survive this part of the test if the insured's mistaken belief has a basis in fact because it cannot be said under such circumstances that the insured's conduct will necessarily result in injury. 820 F.Supp. at 35. As an example, the court in *Allen* explained that an inadvertent straying across an unmarked property boundary to cut trees would constitute an accident while deciding to cut trees on property which is clearly marked with no trespassing signs would not. *Id.*

[¶ 13] We find this authority persuasive. It follows that, to conclude in this case coverage may have existed and, therefore, a duty to defend was created, we must find (1) a good faith belief by the insured that she was acting with authority or (2) a lack of inherent injury occurred from her actions. We can do neither. The undisputed facts are that the parties agreed to share the cost of operating the well; the warranty deed did not convey to Ms. Moore any rights to the well; after the sale was completed, Ms. Moore unilaterally sought and obtained a transfer of the well permit to her from the state engineer's office and removal of Ms. Matlack from the utility account servicing the well, and she began sending bills to Ms. Matlack for her use of water from the well; and, while the parties were in negotiations through counsel over their disputed rights to the well, Ms. Matlack informed Ms. Moore that, if she took any steps to pull the well onto her property, Ms. Matlack would consider her a criminal trespasser and yet Ms. Moore proceeded to do so anyway. Whether or not Ms. Moore actually believed she owned the well, she was fully aware her neighbor strenuously disputed that fact, and, depending on who ultimately was found to be correct, she knew she may be acting improperly. Those facts can hardly be considered as demonstrating a good faith belief she was acting with authority. Further, Ms. Moore's act of pulling the well casing, located "almost precisely" on the property boundary, toward her property necessarily damaged Ms. Mat-

lack's property including disconnecting her home from the well and destroying her water supply. These facts, alleged in the complaint and undisputed by Ms. Moore, do not support an unintentional trespass intended to cause no harm.

[¶ 14] Ms. Moore's stipulation to the entry of a judgment which included punitive damages deserves mention. This court has recognized that a trespasser who believes he is authorized to enter another's property but does so in the face of the owner's opposition or who should have known of the owner's claim to the property is subject to punitive damages. *See Roberts Construction Company v. Vondriska,* 547 P.2d 1171, 1180 (Wyo. 1976); *Hall Oil Co. v. Barquin,* 33 Wyo. 92, 237 P. 255, 274 (1925). In *Hall,* an oil company drilled on property it believed was covered by a lease, but the owner contended otherwise and made his position known. In that circumstance, this court pointed out that, "though an entry is made upon real estate under a conviction that the right to do so exists, if it is in fact wrongful, and willful injury is done to the plaintiff's property, the defendant will be liable for exemplary damages." 237 P. at 274. In this case, the parties stipulated to punitive damages demonstrating they agreed the actions were of a willful and wanton nature. There may well exist other situations in which an action justifying punitive damages can also be considered an accident, and we are not holding that, any time punitive damages are claimed or adjudged, no coverage or duty to defend exists. We do hold the particular facts of this case—an intentional trespass with full knowledge of disputed ownership—does not trigger coverage.

## A. Duty to Defend

[¶ 15] Next, we are faced with the question of whether a duty to defend existed in this case even though coverage was clearly not available. Our jurisprudence has established an insurer's duty to defend is broader than its duty to provide coverage. *Shoshone First Bank v. Pacific Employers Insurance Co.,* 2 P.3d 510, 513–14 (Wyo. 2000).

The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage. The obligation to defend is an independent consideration in liability insurance, and it is invoked by any claim alleged in the complaint that is potentially covered under the policy.

*Id.* (citations omitted). The insurer in *Shoshone First Bank* assumed the duty to defend because a claim of invasion of privacy was made which could have potentially been considered a "personal injury" under the terms of the policy.[1] If the policy potentially covers one or more claims, the insurer has a duty to defend all claims, and any doubts about coverage should be resolved against the insurer. *Alm v. Hartford Fire Insurance Company,* 369 P.2d 216, 219 (Wyo. 1962).

[¶ 16] Ms. Matlack argues that, unlike the situation in *Reisig* where we found no duty to defend because conversion could not constitute an "accident" as contemplated in an insurance policy very similar to the one at issue here, her complaint recites various causes of action so that, if her claim for trespass were not covered by the policy because it involved an intentional act, other claims would arguably give rise to a duty to defend. In *Reisig,* the complaint stated only one claim for conversion. A simple reading of Ms. Matlack's amended complaint exposes the flaw in her argument. All the causes of action rely upon the same facts the intentional trespass. Simply because Ms. Matlack sought to denominate causes of action as "negligence" or "negligent infliction of emotional distress," the facts cannot be magically transformed and thereby create a duty to defend. This court rejected a similar argument in *First Wyoming Bank,* 860 P.2d 1094. There, the Robinsons and the Russells tried to transform a breach-of-contract case into an insured claim by including a cause of action entitled "negligence." However, the underlying nature of the dispute was the bank's alleged failure to loan money to them as promised; e.g., a breach of contract. Those facts did not constitute an "occur-

rence" within the meaning of the policy, and, consequently, we found no duty to defend.

[¶ 17] To determine whether a claim is rationally covered by the terms of the policy, as we said in *First Wyoming Bank,* "we analyze the duty to defend by examining the facts alleged in the complaint." 860 P.2d at 1097. "Therefore, to determine Continental's duty to defend the Bank in the Robinson/Russell litigation, we examine the terms of Continental's policy and the allegations contained in the Robinson/Russell complaint." 860 P.2d at 1097–98. The court then reviewed the complaint and found, "Although there is a claim in the complaints labeled 'NEGLIGENCE,' the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss 'caused by an occurrence,' but instead demonstrate alleged losses resulting from a breach of contract." 860 P.2d at 1099. Further, the opinion noted that misrepresentation could have been a possible claim under the facts alleged but the claim would have required proof of an intentional act and would not constitute an "accident" or "occurrence" within the meaning of the policy. 860 P.2d at 1100. Finding no duty to defend, the court went on to conclude no claim for bad faith refusal to acknowledge coverage existed because the issue of coverage was "fairly debatable," citing *Darlow v. Farmers Insurance Exchange,* 822 P.2d 820, 823 (Wyo. 1991). 860 P.2d at 1101.

[¶ 18] We are faced with the same situation here. Ms. Moore's intentional acts, which she performed with full knowledge of the possibility the well belonged to her neighbor, could not rationally be covered by a policy which limited coverage to "occurrences" or "accidents" and excluded intentional acts by the insured. Consequently, Mountain West was justified in initially denying both coverage and a duty to defend. Ms. Matlack argues it is significant that Mountain West ultimately assumed the defense after the complaint was amended to include a claim entitled "negligence" and the trial

---

1. The ultimate issue in *Shoshone First Bank* was whether the costs of defense could be apportioned between covered claims and those not covered, which issue is not relevant to the issue before us in this case.

court denied summary judgment on that claim. That argument proves the rule that "no good deed goes unpunished." Still claiming no coverage existed, Mountain West, in an abundance of caution and most likely in fear of the slightest possibility a court might conclude there was a potential for coverage, offered to defend with a reservation of rights. The insurer's decision does not alter our conclusion that no coverage was triggered by the facts in the original complaint which remained unchanged in the amended complaint and no legal duty to defend arose.[2]

## B. Bad Faith

 [¶ 19] The trial court also granted summary judgment on the bad faith claim. In *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855, 860 (Wyo.1990), we held the appropriate test for determining whether there was bad faith is the objective standard of whether the validity of the denied claim was not fairly debatable. To prove a claim for bad faith, a plaintiff must demonstrate (1) the absence of a reasonable basis for denying benefits of the policy and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. 789 P.2d at 860. To satisfy the first essential component, an insured must show that a reasonable insurer under the circumstances would not have acted as it did by denying or delaying payment of the claim. *Darlow*, 822 P.2d at 824. Even if a claim for benefits is fairly debatable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles, or denies a claim. *State Farm Mutual Automobile Insurance Company v. Shrader*, 882 P.2d 813, 828 (Wyo.1994). While an insured may state claims for breach of contract and breach of the duty of good faith and fair dealing; the insured does not need to prevail on the contract claim to pursue the bad faith claim. *Id.*

 [¶ 20] The facts upon which Ms. Matlack relies to prove bad faith are not compelling. Obviously, the trial court and

this court have rejected her claim that Mountain West wrongfully denied coverage and initially denied its duty to defend. The only remaining facts which allegedly show bad faith are Mountain West's prompt response to the first complaint, apparently indicating only cursory examination of the case; the delay in its response to the amended complaint, apparently showing it drug its heels; and the change in its position regarding its willingness to defend based upon the amended complaint that Ms. Matlack now admits was not substantively different from the first complaint. Reasonable minds could not differ as to whether, on the basis of these facts, Mountain West acted improperly in the investigation or the handling of the claim. *Lewis v. Platt*, 837 P.2d 91, 93 (Wyo.1992). Given the limited and transparent nature of these facts, the trial court was well justified in finding no dispute of material fact concerning bad faith.

## CONCLUSION

[¶ 21] No genuine issue as to any material fact existed regarding the fundamental issue in this case. All parties agree Ms. Moore intentionally and willfully trespassed onto Ms. Matlack's property despite the latter's protestations and in the midst of their negotiations over ownership of the well. Such action cannot constitute an occurrence under the unambiguous language of the policy as a matter of law. The trial court was correct in granting summary judgment in favor of Mountain West on all claims.

[¶ 22] Affirmed.

---

2. Despite discussion by both parties of *Insurance Company of North America v. Spangler*, 881 F.Supp. 539 (D.Wyo.1995), its rationale is not relevant to the issues in this case. There, the court found coverage did exist; the insurer did assume the defense of the claim and was simply disputing whether the parties' settlement agreement complied with the terms of the policy.