**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NOTWEN CORPORATION, a
Delaware corporation; WCN/GAN
PARTNERS, LTD., a Colorado limited
partnership; WILLIAM C. NEWTON,

Plaintiffs-Appellants,

v.

AMERICAN ECONOMY
INSURANCE COMPANY,

Defendant-Appellee.

No. 06-8016
(D.C. No. 05-CV-104-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]    The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

Plaintiffs Notwen Corporation, WCN/GAN Partners Ltd., and William C. Newton (collectively, "Notwen plaintiffs" or just "plaintiffs,")[1] were insured under a businessowners liability policy issued in Wyoming by defendant American Economy Insurance Company (AEIC). The policy covered, among other things, unintended and unexpected property damage caused by plaintiffs through accidental occurrences. Plaintiffs brought this diversity action against AEIC when it refused to defend them against an Oregon lawsuit that they insisted fell within the scope of the policy. On cross motions for summary judgment, the district court followed the magistrate judge's recommendation to hold that the Oregon lawsuit, alleging plaintiffs had misappropriated trade secrets and other property, arose out of intentional misconduct, not accidental occurrences and, hence, that AEIC had no duty to defend. Plaintiffs appealed. We review the district court's determination, including its assessment of controlling state law, under a de novo standard. *See Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 892 (10th Cir. 2005). We agree with the district court's analysis of the operative contract language and applicable law and, accordingly, affirm.

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." *Houston Gen. Ins. Co.*

---

[1]    William Newton explained that he created WCN/GAN Partners and Notwen Corporation to handle, respectively (with some overlap), his investments and his family affairs generally. Aplt. App. at 274.

*v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997). Thus, as the district court recognized and the parties agree, we look to Wyoming law to determine the scope of AEIC's duty to defend under the policy in question. *See Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1236, 1243 (10th Cir. 2001). Under Wyoming law, the insurer's duty to defend turns on whether "'the alleged claim [against the insured] rationally falls within the policy coverage.'" *Id.* at 1244 (quoting *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000)). To resolve a duty-to-defend claim, the court examines the policy to determine its scope and then reviews the complaint in the underlying lawsuit to determine whether the claims alleged therein could rationally fall within that scope. *Lawrence v. State Farm Fire & Cas. Co.*, 133 P.3d 976, 980 (Wyo. 2006); *Reisig v. Union Ins. Co.*, 870 P.2d 1066, 1068 (Wyo. 1994). That is precisely what the district court did here.

The policy provided that AEIC would undertake plaintiffs' defense if a lawsuit sought damages otherwise covered by the policy. *See* Aplt. App. at 252 (section A.1.a). Property damage was covered if "caused by an 'occurrence,'" *id.* (section A.1.b.(1)(a)), defined in turn as "an accident," *id.* at 263 (section F.12.). Reinforcing the limited nature of this coverage, the policy specifically excluded property damage "expected or intended from the standpoint of the insured." *Id.* at 254 (section B.1.a.). Wyoming courts have found such language unambiguous,

attributing to the term "accident" its commonsense meaning. *Matlack v. Mountain W. Farm Bureau Mut. Ins. Co.*, 44 P.3d 73, 77 (Wyo. 2002). A policy of this sort does not create a duty to defend the insured against intentional tort claims, such as conversion or trespass, or claims that, though not intentional torts, involve a material element of deliberate conduct, such as misrepresentation (which, even if only negligent, requires an intent to induce reliance) and breach of contract. *See, e.g., id.* at 80; *Reisig*, 870 P.2d at 1069-71; *First Wyo. Bank v. Cont'l Ins. Co.*, 860 P.2d 1094, 1099-1101 (Wyo. 1993).

The Oregon lawsuit was brought by the purchaser of assets belonging to a cellular-phone technology firm in bankruptcy proceedings. The purchaser's basic complaint was that trade secrets and other assets of the firm that should have been transferred to the bankruptcy trustee and thence to him had been misappropriated by some of its directors and others who used them to pursue a competing business that essentially continued the bankrupt firm. The pleadings asserted several broad claims, three of which had subsidiary aiding-and-abetting and acting-in-concert "counts" implicating the Notwen plaintiffs for their alleged facilitation of the wrongful scheme.[2] The three claims were for misappropriation of trade secrets,

---

[2] The pleadings in the Oregon suit were amended numerous times. The Notwen plaintiffs did not even appear until the Third Amended Complaint. Plaintiffs assert that to the extent subsequent amendments, which were largely organizational, added any allegations relevant to our inquiry here, they provided

(continued...)

-4-

intentional interference with contract, and intentional interference with economic relations. In the acting-in-concert counts for these claims, the Notwen plaintiffs were alleged to have "agreed . . . to become part of the group pursuing this plan and its associated activities," Aplt. App. at 215, 222, 225. In the aiding and abetting counts, they were alleged to have provided funding, "monitored, reviewed, and provided influential business advice," "approved and directed the continuing misappropriation and concealment of [the bankrupt firm's] trade secrets and other assets from the trustee in bankruptcy," solicited investment for the scheme, and funded litigation "in order to hinder, deter, delay and prevent [the purchaser] from acquiring the [bankrupt firm's assets] to which he is rightfully entitled." *Id.* at 218-220 , 223, 226. More generally, the complaint alleged that the Notwen plaintiffs "at all material times had knowledge of the wrongfulness of the [scheme detailed in the complaint]." *Id.* at 218.

Comparing such intent-driven claims to the accidental-occurrence condition in plaintiffs' liability policy, the district court concluded that the Oregon lawsuit did not trigger a duty to defend. We fully agree, and none of the points raised by plaintiffs persuade us otherwise.

---

[2](...continued)
additional support for plaintiffs' position. Aplt. Opening Br. at 9. We therefore focus on the last pleading, the Fifth Amended Complaint.

Plaintiffs argue that under Oregon law a claim for misappropriation of trade secrets can be based on the use of secrets by someone who knows or only *has reason to know* of their wrongful derivation and, thus, such a claim need not always constitute a strictly intentional tort. But "[i]n determining the question of whether the intentional tort[s] of [misappropriation and intentional interference] can be considered an 'accident,' we look *only to the allegations of the Complaint filed [in the underlying lawsuit]*," *Reisig*, 870 P.2d at 1069 (emphasis added), and this inquiry focuses on "the *facts* in the complaint," *Matlack*, 44 P.3d at 80 (emphasis added). As set out above, the facts alleged regarding the scheme in the Oregon suit, and plaintiffs' participation in particular, clearly reflect knowing misconduct. While the Wyoming Supreme Court has indicated there may be circumstances in which an intentional act based on a mistake could still qualify as an accidental occurrence *if* the mistake had "some basis in fact" and was "held in good faith," *id.* at 78, the factual allegations against plaintiffs in the Oregon suit clearly provide no occasion for application of this limited exception.

Plaintiffs also seek to bring themselves within the principle, accepted by some courts, that a business liability policy may entitle an employer to insist on the insurer's defense against vicarious liability/respondeat-superior claims based on otherwise excluded intentional torts of employees. They insist this principle is implicated here because the Oregon case included allegations of wrongdoing on

-6-

the part of Lisa deCosta, Notwen Corporation's director of investments. But no vicarious liability claim was asserted in the Oregon case. Indeed, the pleadings alleged that all of the Notwen plaintiffs had knowledge of the wrongful enterprise that Ms. deCosta helped facilitate for them and that she acted with the approval of defendant Newton himself. Aplt. App. at 218. In acting as the agent for the Notwen plaintiffs she was alleged, in short, to have been instrumental to the effectuation of their own wrongful designs.

In a last effort to forestall the result dictated by application of the controlling law to the allegations in the Oregon pleadings, plaintiffs argue that the district court should have considered a statement taken from plaintiff William Newton in which he denied knowledge of the wrongdoing alleged in that case. Plaintiffs insist this statement creates a factual dispute as to the intentionality of Newton's conduct and, consequently, as to coverage under the AEIC policy. There are at least two basic problems with this argument. First, it runs afoul of the rule, repeated without qualification in the Wyoming cases we have discussed, that duty-to-defend claims must turn on the allegations in the underlying lawsuit. Second, the argument is patently circular, rendering the exclusion of intentional torts from the liability policy meaningless, at least under the circumstances presented here: it asserts, in effect, that a duty to defend against intentional-tort claims excluded under the policy is nevertheless triggered whenever the insured

denies he committed the alleged intentional torts, i.e., whenever the insured seeks to defend itself (with the insurer's assistance) in a lawsuit alleging intentional-tort claims. We do not think Wyoming law renders the plain and explicit exclusion of intentional-tort claims from a liability policy so insubstantial.

The district court correctly held that the businessowners liability policy at issue here did not impose on AEIC a duty to defend plaintiffs on the claims asserted against them in the Oregon lawsuit. Accordingly, summary judgment was properly entered for AEIC on plaintiffs' claims for breach of contract, bad faith, statutory interest and attorney fees.

The judgment of the district court is AFFIRMED. Appellants' motion to present oral argument is DENIED.

Entered for the Court


Wesley E. Brown
District Judge