**EMPLOYERS MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**Edwin U. PIPER, DBA Piper Construction Company, et al., Appellees.**

Court of Appeals of Kentucky.

May 27, 1960.

Denney & Landrum, Lexington, for appellant.

Moloney, Moloney & Hurst, Lexington, for appellees.

STANLEY, Commissioner.

This is an action for subrogation and an appeal from an adverse summary judgment.

The appellant, plaintiff below, Employers Mutual Fire Insurance Company (hereinafter the insurance company), issued an indemnifying and casualty policy to the Fox Creek Rural Electric Cooperative Association (hereinafter R.E.A.) by which it agreed to pay the insured any loss sus-

tained by reason of several stated causes, one of which was "explosion," at any of four described electric substations. One of them is thus described:

"On Fox Creek sub-station located one quarter mile north of Fox Creek and U. S. No. 62 on the east side of the Anderson City Road, Anderson County, Kentucky."

With respect to "Machinery Coverage," the policy provided that the machinery was insured "only while contained in or attached to the building described on the first page of this policy or on platforms attached thereto, or while located in the open within one hundred feet thereof."

While the insurance was in force, R.E.A'. contracted with the appellee, Edwin U. Piper, dba Piper Construction Company, to dismantle the Fox Creek substation and rebuild it at Vanarsdell in Mercer County. Piper executed a contractor's bond to R.E. A. with his coappellee, Maryland Casualty Company, as surety. Piper's contract was on a detailed and complicated form, which apparently is generally used in projects of this kind that require the approval of the Federal Rural Electrification Administration. The general form seems to be that used for completely new construction, but it was modified by annexed documents to apply to the particular job. The contract is styled as being "to dismantle Fox Creek Substation and install Vanarsdell substation." It contained specific provisions to accomplish that end. It stipulated that all material required for the erection of the substation, except concrete and gravel, should be furnished by the Owner, namely R.E.A. A general provision of the contract under the caption, "Protection to Persons and Property," is this:

"All machinery and equipment and other physical hazards shall be guarded in accordance with the 'Manual of Accident Prevention in Construction' of the Associated General Contractors of America, unless such instructions are incompatible with Federal, State or Municipal laws or regulations."

The liability provision of the contract in respect to the present litigation is this:

"(h) The Project, from its commencement to completion, or to such earlier date or dates when the Owner may take possession and control, shall be under the charge and control of the Bidder [Piper] and during such period of control by the Bidder all risks in connection therewith and the materials to be used therein shall be borne by the Bidder. The Bidder will make good and fully repay all injuries and damages to the Project or any portion thereof under the control of the Bidder by reasons of any act of God, or any other casualty or cause whether or not the same shall have occurred by reason of the Bidder's negligence. The Bidder will hold the Owner harmless from any and all claims for injuries to persons or for damage to property during the control by the Bidder of the Project or any part thereof."

The contractor's bond provided for indemnity of R.E.A. in the penal sum of $7,395 for damage which it or the federal government should suffer by reason of the contractor's failure to perform his contract.

According to the insurance company's complaint, while Piper was rebuilding the substation in April, 1955, unknown persons set off explosives which damaged the property to the amount of $20,026.81. On demand it paid that sum to R.E.A. On Piper's rejection of the insurance company's claim that he was liable for the damage under his bond and its demand that he pay the loss, this suit was brought against Piper for subrogation. R.E.A. is not a party. Plaintiff prayed recovery for the full sum from Piper and for $7,395 from his surety.

The joint answer pleaded the complaint did not state a cause of action and then traversed in part its allegations, including

liability and that the damaged property was at the time under Piper's control. The answer also set up several affirmative defenses, among which were that the contractor's bond covered only the building, which it charged was being constructed of new material; that R.E.A. had possession and control of the property damaged at the time of the explosion; and that the contractor's bond had reference only to labor and material to be furnished by the contractor and did not cover the loss sustained. It pleaded that Piper was not responsible for the loss under either his contract or bond. The documents referred to in the pleadings were filed as exhibits.

By absence of denial of certain material allegations of the complaint and of statements in Piper's affidavit filed in support of his motion for a summary judgment, it stands admitted that while the substation was being reassembled with salvaged as well as new material at Vanarsdell, a distance of about 12 miles from the original Fox Creek location, machinery had been destroyed or damaged by explosives set off by unknown persons. Issues of fact were formed by the combined pleadings, affidavits and admissions of the plaintiff, namely: (1) whether at the time the property was under the control and possession of Rural Co-op or of Piper, and (2) whether the damaged property was "located in the open within one hundred feet" of the building or structure covered by the insurance policy.

The appellant contends that these were genuine issues of fact and, therefore, the summary judgment was improperly awarded. CR 56.03. In response, the appellees maintain there were only two distinct legal questions presented to the court, namely: (1) whether Piper, under the terms of his contract and bond, should be held responsible for the loss, and (2) if he was, then whether or not the insurance company was a volunteer, not entitled to subrogation in any event.

The appellant has not claimed that the relocation of the Fox Creek substation took it out from under the coverage of its policy of insurance. Its claim against Piper rests on the ground that the property damaged was under Piper's control and that he and the surety on his bond were primarily liable to R.E.A. and the insurer secondarily liable. On the contrary, appellees contend, as we understand the argument, that the insurance company was not liable at all to R.E.A. for the loss because the substation at Vanarsdell was not within the coverage of its policy, and, therefore, it was a volunteer in paying the damage to R.E.A. It is said in appellees' brief that this was the ground for the summary judgment. The legal question of whether all liability under the contract and bond was limited to the structure or to labor and material to be furnished by the contractor was not decided.

We think as a matter of judicial interpretation the construction contract (as quoted above) is broad enough to cover the loss of the machinery, which was presumably owned by R.E.A. since it was bound to furnish all material required, provided, however, that the contract had not been completed and the structure and work of installation was still under the control and in the possession of the contractor, Piper. If the machinery had yet to be installed in the substation by Piper, it was within the coverage of his obligations to R.E.A. to guard it and to "make good and fully repay all injuries and damages" by reason of "any other casualty or cause whether or not the same shall have occurred by reason of the Bidder's [the contractor's] negligence." If such fact be established, the legal question arises whether that made Piper primarily liable and the insurance company secondarily liable to R.E.A. In such eventual decision, the insurance company could not be regarded as a volunteer in paying R.E.A. for the loss and would be entitled to subrogation against Piper. However, this claimed secondary liability was contingent upon the ascertainment of the further fact that the machinery was "in the open within one hundred feet" of the structure.

If it had been proved that the machinery was outside the insurance policy coverage, then the legal question would have been presented as to whether the insurance company was a mere volunteer in paying R.E.A. for its loss.

It seems to us there were two genuine issues as to material facts and that the court was in error in granting a summary judgment.

When the issues of fact shall have been determined, the court will be in a position to adjudge the rights of the respective parties. It seems inappropriate for this court to express an opinion with respect thereto.

The conclusion of the court is that the summary judgment should not have been rendered and should be reversed and the case remanded for proceedings consistent with this opinion.

Judgment reversed.