**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CAROLINA CASUALTY INSURANCE
COMPANY,

      Plaintiff Counterclaim Defendant -
      Appellant/Cross-Appellee,

v.                                                                Nos. 18-8071 & 18-8077

BURLINGTON INSURANCE
COMPANY,

      Defendant Counterclaimant -
      Appellee/Cross-Appellant.
_____

**Appeals from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:17-CV-00020-NDF)**
_____

Jon M. Hughes of McMickle, Kurey & Branch, LLP, Alpharetta, Georgia (Scott W.
McMickle of McMickle, Kurey & Branch, LLP, Alpharetta, Georgia; Kevin F. Amatuzio
and Lori K. Bell of Montgomery, Amatuzio, Chase, Bell & Jones, LLP, Denver,
Colorado, with him on the briefs), for Plaintiff Counterclaim Defendant –
Appellant/Cross-Appellee.

Thomas H. Crouch of Meagher & Geer, PLLP, Scottsdale, Arizona, for Defendant
Counterclaimant – Appellee/Cross-Appellant.
_____

Before **PHILLIPS**, **EBEL**, and **O'BRIEN**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

In this appeal and cross-appeal, we must decide which of two insurers' insurance policies covers bodily injuries suffered in a well-site fire ignited by use of a cigarette lighter. Carolina Casualty Insurance Company and Burlington Insurance Company had earlier issued policies to RW Trucking, LLC. By design, the two policies dovetail each other's coverage. Each insurer contends that the other is solely liable to indemnify the insureds, RW Trucking and its driver Jason Metz, for damages arising from David Garza's bodily injuries suffered in the fire. After Burlington and Carolina jointly settled Garza's claims, with each reserving its rights against the other, Carolina filed this declaratory-judgment action, contending that it had no duty to defend or indemnify RW Trucking or Metz, and seeking reimbursement of its paid portion of Garza's settlement. On cross motions for summary judgment, the district court ruled (1) that Carolina owed a duty to defend but not a duty to indemnify; (2) that Burlington owed a duty to indemnify (and so implicitly, also a duty to defend); (3) that Carolina paid its share of the settlement as a volunteer, disabling itself from recovering its portion of the settlement payment from Burlington; and (4) that Carolina owed Burlington for half the total defense costs. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

# BACKGROUND

## I.      The Well-Site Accident

RW Trucking pumps fracking water from frac tanks at oil-well sites and hauls it away for disposal. Metz worked as a driver for RW Trucking.[1] On March 23, 2014, Metz was at a New Mexico well site pumping fracking water from a frac tank into his truck's trailer (an enclosed tank). In preparing to do so, Metz backed his trailer to the frac tank, got out of his truck, and hooked a hose from the trailer to the frac tank. To empty the frac tank, he used a pump attached to his work truck,[2] powered by the truck's engine. When the trailer reached capacity, Metz turned off the pump and disengaged the hose. According to Metz, he then left a ticket in the truck of another well-site worker, Garza. Metz testified that as he began walking back to his truck's cab from its passenger side, and about sixty feet from the frac tanks, he flicked his lighter to light a cigarette. This ignited fumes and caused the flash fire that injured Garza (as well as Metz and another nearby RW Trucking employee).

Garza described the incident slightly differently. Garza testified that Metz was "[l]oading up his water truck" when Metz flicked his lighter. App. at 730 (Deposition of David Garza at 80:8). Garza said that, when the fire occurred, he was within arms'

---

[1] Carolina contends that Metz may have been a truck driver for KT Investments, Inc., a company that provided RW Trucking with trucks and drivers that operated under RW Trucking's authority. But neither Carolina nor Burlington contests that Metz is an insured.

[2] Burlington disputes that the pump was attached to the truck. But Metz testified that the pump was attached to the truck, not the trailer, and we see nothing in the record that says otherwise.

length of Metz discussing with him and another truck driver which tanks needed

emptying that day.

## II.     The Resulting Personal-Injury Lawsuit

In November 2014, Garza sued in New Mexico state court the well-site

operator (Devon Energy Production Company, L.P.), Metz, RW Trucking, and KT

Investments, Inc., alleging premises liability and negligence. The complaint's factual

section states in full:

> 9. Devon is and was at all relevant times the operator of a well known as Cotton Draw Unit, Well No. 214H, located in Eddy County, New Mexico (the "well site").
>
> 10. As the operator, Devon was responsible for the design, construction, maintenance, repair, inspection, structure assembly, installation, upkeep, and safety of the well site and the well site equipment.
>
> 11. On March 23, 2014, there was an explosion at the well site in which Plaintiff was injured. The explosion happened after Defendant Metz lit a cigarette and because Defendant Devon failed to properly inspect, maintain, and operate the well site.
>
> 12. Plaintiff suffered serious burns and other injuries.

*Id.* at 329. Garza alleged that Metz owed him a duty to exercise ordinary care, which

Metz breached, and that RW Trucking had negligently hired, trained, supervised, and

retained its agents and had not trained, controlled, directed, or supervised its employees

as a reasonable employer would have done.

Garza filed an amended complaint nearly two years later. There, he re-alleges

the same claims as in the original complaint—but added vicarious liability as an

additional theory supporting his claim against RW Trucking—with a few additional

factual allegations. The factual section now states in full:

4

9. Devon is and was at all relevant times the operator of a well known as Cotton Draw Unit, Well No. 214H, located in Eddy County, New Mexico (the "well site").

10. As the operator, Devon was responsible for the design, construction, maintenance, repair, inspection, structure assembly, installation, upkeep, and safety of the well site and the well site equipment.

11. At all times relevant to this lawsuit, Defendant R W Trucking's business was to haul water at the Cotton Draw Unit under a contract with Devon. R W Trucking entered into contracts with other entities, including KT Investments, Inc., to carry out R W Trucking's work under the Devon contract. In order to carry out its duties under the contract with R W Trucking, it was necessary for KT Investments to associate drivers.

12. Truck drivers were essential to R W Trucking's business. R W Trucking hired, trained, supervised, and retained Jason Metz as a driver. It was within Metz'[s] job duties to drive to particular well sites, talk to personnel at the well sites, and take direction from other personnel as to where to go and what fluids to haul.

13. R W Trucking retained contractual control over the details of Jason Metz'[s] work, and exercised actual control over the details of Jason Metz'[s] work. R W Trucking performed a road test of Jason Metz and had ultimate authority to accept or reject Jason Metz as a driver. R W Trucking dispatched Jason Metz, thus telling him where to go and when to be there. R W Trucking provided Jason Metz with all necessary equipment to perform the job, including the tractor and trailer that Jason Metz drove. R W Trucking had control over whether to terminate Jason Metz'[s] employment as a driver, and had control over whether to discipline Jason Metz for violations of R W Trucking's policies and procedures.

14. In addition, KT Investments, Inc. and R W Trucking, LLC were engaged in a joint venture and/or partnership. They shared in profits and losses from work performed at the Cotton Draw Unit. When Jason Metz worked at the Cotton Draw as a driver for R W Trucking, he was instructed to identify himself only as an agent of R W Trucking. The truck Jason Metz drove bore the emblem of R W Trucking.

15. On March 23, 2014, there was an explosion at the well site in which Plaintiff was injured. The explosion happened after Defendant Metz lit a cigarette and because Defendant Devon failed to properly inspect, maintain, and operate the well site.

5

16. Plaintiff suffered serious burns and other injuries.

*Id.* at 588–89.

Garza also alleges that Devon breached its duty to him by its "failure to store oil in a way that would stop or limit the release of explosive gas into the atmosphere." *Id.* at 590. But the amended complaint provides no additional factual allegations regarding Metz and RW Trucking.

In 2015, Burlington defended RW Trucking against Garza's claims, and in 2016 defended Metz too. Both defendants had tendered their defense[3] to Burlington, which defended under a reservation of rights. In October 2016, RW Trucking's counsel sent Carolina a letter asking whether Carolina intended to indemnify it for any damages awarded to Garza. In November 2016, Burlington tendered RW Trucking's defense to Carolina. A few days later, Carolina's coverage counsel acknowledged having received RW Trucking counsel's letter and advised that it would need about a week to respond. In January 2017, Metz's counsel tendered his defense to Carolina. On January 23, 2017, Carolina responded to Metz's counsel, stating that it was "reviewing all coverage issues involved in this matter and reserv[ing] all rights under the Motor Carrier policy referenced above." *Id.* at 811. Carolina further advised that it planned to attend a mediation scheduled for January 31, 2017. That same day, Carolina responded identically to RW Trucking counsel's letter. At the mediation conference, Garza settled his claims for $850,000—

---

[3] A tender of defense notifies the insurer of all claims against its insured. *See, e.g.*, 14 Steven Plitt et al., *Couch on Insurance* § 200.32 (3d ed., Dec. 2019 update).

Burlington paid $415,000 on behalf of RW Trucking and Metz; Carolina, $375,000 on behalf of RW Trucking; and Devon, $60,000 on its own behalf.

In the settlement agreement, Carolina and Burlington reserved "all rights between themselves to seek reimbursement/contribution/subrogation/indemnity, etc. from the other for the contributions made to the settlement amounts set forth herein." *Id.* at 1023. In a release signed after settlement, they also reserved the "right to bring any claims that they have or may have against one another arising from their coverage and/or defense of the claims asserted in the Lawsuit." *Id.* at 1028.

## III. The Insurance-Coverage Dispute

On the day of the accident, RW Trucking had in force a commercial-automobile policy from Carolina, and a commercial-general-liability policy from Burlington. In January 2017, after the settlement, Carolina sued Burlington in the District of Wyoming for a declaratory judgment that Burlington—not Carolina—had owed RW Trucking and Metz a duty to defend and a duty to indemnify. Carolina also sought reimbursement of the $375,000 it had paid to settle Garza's claims. Burlington counterclaimed, taking the opposite view that Carolina in fact owed a duty to defend and a duty to indemnify; that by breaching its duty to defend, Carolina owed Burlington reimbursement for all costs of defense; and that Carolina was responsible to reimburse Burlington the $415,000 Burlington had paid to settle Garza's claims.

Both Carolina and Burlington filed motions for summary judgment. Proceeding under diversity jurisdiction, the Wyoming federal district court applied

7

Wyoming's choice-of-law rules (as the forum state). That led the district court to apply the Restatement (Second) Conflict of Laws ("Second Restatement") in determining whether Wyoming or New Mexico had the most significant contacts to the insurance contracts. Under the Restatement, the court applied Wyoming's substantive law, not New Mexico's, in interpreting the two insurance policies. The district court concluded that Wyoming law instructed it to resolve the policy-coverage dispute by comparing the allegations from Garza's complaints with the language from the two insurers' policies. After doing so, the court ruled that Carolina had no duty to defend, so no duty to indemnify either. But the court ruled that Burlington did owe a duty to indemnify (and so implicitly, also a duty to defend), based on its policy's terms. Even so, the court declined to order Burlington to reimburse Carolina for its share of Garza's settlement, ruling that Carolina had paid as a volunteer.

Dissatisfied, Carolina and Burlington filed motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). In response, the district court declined to reconsider its ruling that Carolina had paid as a volunteer. It also declined to reconsider its decision that Wyoming law governed the duty-to-defend issue. But the court did reconsider and reverse its ruling that Carolina owed no duty to defend. This time the court ruled that Carolina did in fact have a duty to defend, which it had breached. Even so, the district court ruled that Carolina had no duty to indemnify, based on a policy exclusion.

8

Carolina timely filed a notice of appeal challenging portions of the original judgment and the amended judgment. A few days later, Burlington filed in the district court a motion to correct or amend the amended judgment under Federal Rule of Civil Procedure 60(a), seeking reimbursement for Carolina's share of the defense costs. Burlington also timely cross-appealed the original judgment and the amended judgment. We abated proceedings in our court pending the district court's resolution of Burlington's Rule 60(a) motion. As described in its resulting order, the district court "correct[ed]" its amended judgment to award Burlington Carolina's share of the defense costs, $66,670.76, which resulted in a second amended judgment. App. at 1571–72. Neither party filed a notice of appeal from this second amended judgment or amended their prior notices of appeal to include this judgment.

## ANALYSIS

On appeal, Carolina claims that the district court erred (1) in its original judgment by ruling that Carolina had paid its portion of the total settlement as a volunteer, and (2) in its first-amended judgment by ruling that Carolina had a duty to defend. In addition, Carolina claims that the district court erred in its second-amended judgment by awarding Burlington half of the total defense costs.

In its cross-appeal, Burlington claims that the district court erred in its original judgment by ruling (1) that Wyoming law applies in resolving whether Carolina had a duty to defend, and (2) that Burlington had a duty to indemnify so it could not recover its portion of the total settlement. Burlington also challenges the district court's ruling in its first-amended judgment that Carolina had no duty to indemnify.

9

We have appellate jurisdiction for all of the arguments concerning the original and first-amended judgments: (i) whether Wyoming's law, and not New Mexico's, applies in resolving the duty-to-defend issue; (ii) whether Carolina had a duty to defend its insureds in Garza's lawsuit; (iii) whether Carolina had a duty to indemnify; (iv) whether Burlington had a duty to indemnify; and (v) whether Carolina settled as a volunteer. But as explained next, we have no appellate jurisdiction for Carolina's claim arising from the district court's second-amended judgment.

## I. Jurisdictional Issue

"It is well established that '[a] timely-filed notice of appeal is mandatory and jurisdictional.'" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1008 (10th Cir. 2018) (alterations in original) (quoting *Yost v. Stout*, 607 F.3d 1239, 1242 (10th Cir. 2010)). A notice of appeal must "designate the judgment, order, or part thereof being appealed[.]" Fed. R. App. P. 3(c)(1)(B). And a party must file a timely "notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)" to appeal an order ruling on a timely Rule 60(a) motion. Fed. R. App. P. 4(a)(4)(B)(ii).

Carolina's third claim of error, regarding the court's award against it for half of the total defense costs, challenges the district court's order granting Burlington's Rule 60(a) motion to correct the first-amended judgment. But Carolina never filed a notice of appeal on this judgment. Thus, under Appellate Rule 4(a)(4)(B)(ii) and our caselaw, Carolina is barred from challenging that judgment. *See, e.g.*, *Husky Ventures*, 911 F.3d at 1009; *Breeden v. ABF Freight Sys., Inc.*, 115 F.3d 749, 752

10

(10th Cir. 1997). We have no jurisdiction to hear a claim challenging that judgment.[4]

Because Carolina's two other claims and all of Burlington's claims regard orders specified in their notices of appeal, these claims are properly before us and we proceed to consider their merits.

## II.     Standard of Review

We review de novo a district court's grant of summary judgment. *Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018). When "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" summary judgment is appropriate. Fed. R. Civ. P. 56(a). We view the facts and draw reasonable inferences in the nonmovant's favor. *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006). We also review de novo the district court's choice-of-law determination. *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016).

"We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (citing *Brown v. Presbyterian Healthcare Serv.*, 101 F.3d 1324, 1331 (10th Cir. 1996)).[5] We affirm unless we have "a definite and firm conviction that the lower

---

[4] Nevertheless, we vacate the district court's order and judgment halving costs between the two insurers, because we conclude that Carolina owed no duty to defend. *See infra* Section III.B.

[5] Carolina contends that we should review de novo the ruling on its Rule 59(e) motion because it turns on a question of law, relying on *DeCarlo v. Bonus Stores, Inc.*, 512 F.3d 173, 175 (5th Cir. 2007) and *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir. 1998). We decline to adopt de novo review for Rule 59(e) rulings

11

court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* We also review to determine whether the court's exercise of its discretion was misguided "by erroneous legal conclusions." *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011) (citation omitted). But when the district court's Rule 59(e) ruling results in a judgment that is also "properly preserved and appealed, that judgment may be reviewed separately," allowing the merits to "be reviewed under what is likely a less deferential standard of review." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 n.5 (10th Cir. 2017).

## III.   Duty to Defend

We begin by analyzing the duty to defend because it is broader than the duty to indemnify. Carolina argues that the district court correctly entered judgment in its original judgment for Carolina on the duty-to-defend issue and erred by reversing itself on that point in its first-amended judgment. Before reaching the merits, we first determine whether Wyoming or New Mexico law applies.

### A.   Wyoming Law Applies to the Duty-to-Defend Issue.

This is a diversity action, so we apply the forum state's choice-of-law rules. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255

---

at this time because the result here is the same under either standard. We are cognizant, however, of the growing trend to apply de novo review when both the summary-judgment ruling and later Rule 59(e) ruling are appealed. *See DeCarlo*, 512 F.3d at 175; *Perez v. Aetna Life Ins.*, 96 F.3d 813, 819 (6th Cir. 1996), *vacated on other grounds*, 106 F.3d 146 (6th Cir. 1997)).

12

(10th Cir. 2005). Wyoming analyzes choice-of-law questions under "the approach defined by the [Second Restatement]." *Elworthy v. First Tenn. Bank*, 2017 WY 33, ¶ 23, 391 P.3d 1113, 1120 (Wyo. 2017); *accord Bradley v. Bradley*, 2007 WY 117, ¶ 20, 164 P.3d 537, 543 (Wyo. 2007) ("In resolving conflicts over what state's law applies to a particular problem, we have adopted Restatement (Second) of Conflict of Laws . . . .").[6] But Wyoming courts engage in a choice-of-law analysis only when facing "an actual conflict between the laws or interests of Wyoming and the laws or interests of another state." *Act I, LLC v. Davis*, 60 P.3d 145, 149 (Wyo. 2002). "The existence of such a conflict can only be determined in the context of a specific law applied to a specific issue." *Id.* (citing 15A C.J.S. *Conflict of Laws* § 27 (2002)). "When there is no conflict, the Court applies the law of the forum." *Id.* (citing 15A C.J.S. *Conflict of Laws* §§ 27, 41 (2002); 16 Am. Jur. 2d *Conflict of Laws* § 85 (1998)).

---

[6] Carolina contends that Wyoming has not adopted Second Restatement § 188's most-significant-relationship test for contract issues and instead applies the law of the state where the contract issued. In support, Carolina cites our unpublished decision in *Larson v. Larson*, 687 F. App'x 695 (10th Cir. 2017) (unpublished). But *Larson* simply recognizes that Wyoming "regularly follows the Second Restatement's approach in resolving choice of law questions," and does not discuss § 188. *See* 687 F. App'x at 707 (citations omitted). Carolina also cites a Wyoming Supreme Court case noting that "[w]e do not understand that this Court adopted the 'most significant relationship test' of . . . § 188." *BHP Petroleum (Ams.), Inc. v. Texaco Expl. & Prod., Inc.*, 1 P.3d 1253, 1257 (Wyo. 2000). But the Wyoming Supreme Court was determining where the claim arose, a different question from ours. *See id.* Since then, the Wyoming Supreme Court has announced that it uses the Second Restatement "[i]n analyzing choice of law questions[]" and used § 188 to determine which state's law should apply to a breach-of-contract claim. *Elworthy*, ¶¶ 23, 26–28, 391 P.3d at 1120–21. We take our guidance from that case.

13

Both Wyoming and New Mexico begin by comparing the complaint's factual allegations with the insurance policy's terms. *See Lopez v. N.M. Pub. Sch. Ins. Auth.*, 1994-NMSC-017, ¶ 8, 117 N.M. 207, 870 P.2d 745, 747 ("Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy."); *First Wyo. Bank, N.A., Jackson Hole v. Cont'l Ins.*, 860 P.2d 1094, 1097 (Wyo. 1993) ("[W]e analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon." (citing *Aetna Ins. v. Lythgoe*, 618 P.2d 1057, 1061 n.2 (Wyo. 1980))). This is known as the "four corners" (or "eight corners") rule.

But the two states differ in their approach to the duty to defend in two substantial ways. First, New Mexico allows courts to consider extrinsic facts—the "known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 1990-NMSC-094, ¶ 11, 110 N.M. 741, 799 P.2d 1113, 1116 (citation omitted). The Wyoming Supreme Court has not taken this step. In *Reisig v. Union Insurance*, 870 P.2d 1066, 1069 (Wyo. 1994), the Wyoming Supreme Court noted that "we look only to the allegations of the Complaint filed by Rocky Mountain to see if there is alleged a loss 'caused by an occurrence' as required by the CGL policy[.]" Other Wyoming cases have also relied exclusively on complaint allegations. *See Lawrence v. State Farm Fire & Cas. Co.*, 2006 WY 56, ¶ 13, 133 P.3d 976, 981 (Wyo. 2006) ("[T]he obligation to defend is invoked by any claim alleged in the complaint that is potentially covered under the policy."); *Matlack v. Mountain W. Farm Bureau Mut.*

14

*Ins.*, 2002 WY 60, ¶ 17, 44 P.3d 73, 80 (Wyo. 2002) ("[W]e analyze the duty to defend by examining the facts alleged in the complaint." (internal quotation marks omitted) (quoting *First Wyo. Bank*, 860 P.2d at 1097)); *Shoshone First Bank v. Pac. Emp'rs Ins.*, 2 P.3d 510, 514 (Wyo. 2000) ("The obligation to defend is an independent consideration in liability insurance, and it is invoked by any claim alleged in the complaint that is potentially covered under the policy." (citation omitted)); *First Wyo. Bank*, 860 P.2d at 1097 ("[W]e analyze the duty to defend by examining the facts alleged in the complaint . . . .").[7]

Second, for insurers found to have breached their duty to defend, New Mexico imposes liability for any good-faith settlement of its insured. *See Am. Gen. Fire & Cas. Co*, 1990-NMSC-094, ¶ 18, 799 P.2d at 1116. Wyoming has not yet spoken on that issue. But any difference here would not matter, because we conclude that Carolina would have no duty to defend under either state's law. *See infra* Section

---

[7] We acknowledge having said in this context that "Wyoming courts rely on extrinsic evidence." *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1171 n.14 (10th Cir. 2010) (citing *Sabins v. Commercial Union Ins.*, 82 F. Supp. 2d 1270, 1275–78 (D. Wyo. 2000)). But this statement was dicta based on a single District of Wyoming case, *Sabins*. And before *Sabins*, we note that the same court stated that the duty to defend "is determined solely from the allegations contained in the third party complaint." *Progressive Cas. Ins. v. Brown's Crew Car of Wyo., Inc.*, 27 F. Supp. 2d 1288, 1294 (D. Wyo. 1998) (citing *First Wyo. Bank*, 860 P.2d at 1075). Further, a post-*Sabins* case states that "[a]fter careful review of Wyoming case law, . . . this Court believes that it is limited to the four-corners of the underlying complaint in considering whether a duty to defend arises." *Heart Mountain Irrigation Dist. v. Argonaut Ins.*, No. 07-CV-136-B, 2008 WL 11336403, at *4 (D. Wyo. Feb. 8, 2008).

III.B. With no conflict to analyze, we apply the forum state's law—Wyoming's. *Act I, LLC*, 60 P.3d at 149.

### B. Carolina Did Not Have a Duty to Defend Its Insureds for the Accident.

The duty to defend is broader than the duty to indemnify, because the duty to defend is not based on ultimate liability or the merits of the underlying lawsuit. *First Wyo. Bank*, 860 P.2d at 1097 (citing *Lythgoe*, 618 P.2d at 1061). The insurer must defend any "alleged claim [that] rationally falls within the policy coverage." *Matlack*, 2002 WY 60, ¶ 15, 44 P.3d at 80 (internal quotation marks omitted) (quoting *Shoshone*, 2 P.3d at 513). We determine this by comparing the complaint's allegations to the policy's terms. *E.g.*, *Reisig*, 870 P.2d at 1068; *First Wyo. Bank*, 860 P.2d at 1097–98. In making this comparison, we focus on the complaint's factual allegations and "not on the label counsel applied to a particular cause of action." *Matlack*, 2002 WY 60, ¶ 10, 44 P.3d at 78. "If there be any doubt as to whether the insurance company need defend the insured, that doubt must be resolved in favor of the insured." *Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*, 243 F.3d 1232, 1244 (10th Cir. 2001) (citing *First Wyo. Bank*, 860 P.2d at 1095; 46 C.J.S. *Insurance* § 1145(a)).

Garza's personal-injury claims against RW Trucking and Metz as alleged in his complaints do not rationally fall within Carolina's policy coverage. First, we look at Carolina's policy. In examining and interpreting Carolina's policy, we must "ascertain what [RW Trucking and Carolina] reasonably intended as its object

16

and . . . ascribe to the terms used their plain, ordinary and customary meaning in order to effectuate the intent of the parties." *Worthington v. State*, 598 P.2d 796, 806 (Wyo. 1979) (citations omitted). Carolina's policy provides that Carolina "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'" and "will have the right and duty to defend any 'insured' against a 'suit' asking for such damages[.]" App. at 28–29.[8] This insuring provision is unambiguous, so we must interpret it "according to the ordinary and the usual meaning of its terms." *Worthington*, 598 P.2d at 806 (citations omitted). Such interpretation shows that the policy's object is to cover accidental injury or loss "resulting from the ownership, maintenance or use of" an RW Trucking auto. App. at 28. We must not so strictly construe this provision "as to thwart its general object; and it must be emphasized that the policy *is not a general comprehensive liability contract*, which covers every conceivable liability to which [RW Trucking and Metz] may be subjected." *Worthington*, 598 P.2d at 806–07 (emphasis added) (citations omitted).

With these concepts in mind, we turn to the primary issue under the policy—whether Garza's injuries "result[ed] from the ownership, maintenance or use of a covered 'auto'." App. at 28. Both Carolina and Burlington assume that "resulting from" is synonymous with "arising out of." We agree. *See Sperry v. Fremont Cty.*

---

[8] The words appearing in quotes are defined in the policy. This is true throughout this opinion when the insurance policies are quoted.

*Sch. Dist.*, 84 F. Supp. 3d 1277, 1287 n.3 (D. Wyo. 2015) (concluding that "the term 'resulting' from used in the insurance provision at issue is indistinguishable from [the] phrase 'arising from' as used in *Worthington*" and noting that Black's Law Dictionary defines "arise" as "[t]o result (from)"). The Wyoming Supreme Court has interpreted the phrase "'arising out of the ownership, maintenance or use' in the context of an automobile liability insurance policy," *Worthington*, 598 P.2d at 807, and we apply its conclusions to our interpretation of Carolina's policy.

"[A] causal connection or relation must exist between an accident or injury and the ownership, maintenance or use of an insured vehicle before the injury or loss sustained can be considered within the risk covered by the clause." *Id.* (citations omitted). "In determining whether an injury arose out of use, the evidence must demonstrate that it was the natural and reasonable incident or consequence of the use of an insured vehicle, the causal connection being reasonably apparent." *Id.* (citations omitted). "If the injury was directly caused by some independent or intervening cause wholly disassociated from, independent of or remote from the use of the automobile, the injury cannot be held to arise out of its use." *Id.* (citations omitted). This is known as the "natural consequences" test, which the Wyoming Supreme Court reaffirmed in 1992 as "the definitive expression of Wyoming law," concluding that the rival "but for" and "some nexus" tests are overly broad. *Ulrich v. United Servs. Auto. Ass'n*, 839 P.2d 942, 949 (Wyo. 1992) (finding the tests adopted in *Wyoming Farm Bureau Mutual Insurance v. State Farm Mutual Automobile Insurance*, 467 F.2d 990 (10th Cir. 1972), and *General Accident Insurance Co. of America v. Oliver*,

18

574 A.2d 1240 (R.I. 1990), unpersuasive).[9] So for Carolina's policy to cover Garza's injuries, the well-site fire must have been "the natural and reasonable incident or consequence" of Metz's use of an auto (the tractor-trailer), with a reasonably apparent causal connection. *Worthington*, 598 P.2d at 807.

Second, we examine Garza's factual allegations to determine if they demonstrate that his injury resulted from the use of an auto. *See, e.g.*, *First Wyo. Bank*, 860 P.2d at 1097. Garza's original complaint[10] does not reference an auto, let alone the use of one, so its claims could not potentially have fallen within Carolina's policy. *See Matlack*, 2002 WY 60, ¶ 15, 44 P.3d at 80 (noting that an insurer has a duty to defend "[i]f the policy potentially covers one or more claims"). Garza's amended complaint mentions an auto (Metz's tractor-trailer) when referring to RW Trucking's business and Metz's presence at the well site. It thus allows the inference that Metz had somehow used an auto on the day of the accident. But it does not connect the auto to the accident: "On March 23, 2014, there was an explosion at the well site in which Plaintiff was injured. The explosion happened after Defendant

_____

[9] *Ulrich* announces the Wyoming law on this point. *See, e.g.*, *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007) ("When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court." (citing *Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 869 (10th Cir. 1993))).

[10] Though an amended complaint ordinarily supersedes the original complaint, *e.g.*, *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991), we look at both complaints here because either could have triggered Carolina's duty to defend, *see, e.g.*, *Matlack*, 2002 WY 60, ¶ 18, 44 P.3d at 81 (looking at the original and amended complaints).

19

Metz lit a cigarette and because Defendant Devon failed to properly inspect, maintain, and operate the well site." App. at 589.

The amended complaint blames Devon for the presence of explosive gas at the well site; blames Metz for flicking his cigarette lighter, which ignited the gas; and blames RW Trucking for "[f]ailing to train, supervise, direct or control" Metz. *Id.* at 591. The amended complaint does not point to a causal connection between Metz's inferred use of an auto and the fire that resulted when he flicked his lighter. On that pleading, Garza's claims cannot rationally or potentially fall within Carolina's auto-policy coverage. *See, e.g.*, *Hutchinson Oil Co. v. Federated Serv. Ins.*, 851 F. Supp. 1546, 1553 (D. Wyo. 1994) ("[T]he duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." (internal quotation marks and citation omitted)); *First Wyo. Bank*, 860 P.2d at 1099 (finding no duty to defend because "the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss 'caused by an occurrence[]'" as needed to trigger coverage). This means that Carolina had no duty to defend RW Trucking or Metz in Garza's personal-injury lawsuit. And, owing no duty to defend, Carolina owes Burlington no share of the defense costs.

Burlington would have us consider extrinsic evidence in considering whether Carolina owed a duty to defend. As mentioned, we are unpersuaded that Wyoming allows that. But even if it did, or if we instead applied New Mexico law allowing extrinsic evidence, Carolina would still prevail. As extrinsic evidence, Burlington

20

points to three letters mentioning that Metz was pumping fracking water into his trailer when the accident occurred. But knowing that the fire started while a fracking-water-truck driver was pumping fracking water from a frac tank would not rationally bring Garza's claims within Carolina's policy coverage. That does nothing to change the agreed fact that Garza was injured by fumes ignited by Metz's cigarette lighter. Accordingly, the letters cannot overcome this and support a view that Garza's injuries were "the natural and reasonable incident or consequence" of Metz's use of an auto. *Worthington*, 598 P.2d at 807. So the letters did not give Carolina notice that Garza's injuries resulted from use of an auto. Absent that, the letters did not trigger a duty to defend.

Further, even if we concluded that the extrinsic letters sufficed to raise a possibility that Garza was injured by a use of an auto, Burlington still could not show that Carolina owed a duty to defend. Any such use of an auto (pumping fracking water into a trailer's tank) would fail at the next required interpretive step—at Carolina's policy exclusion for operations:

> **9. Operations**
> "Bodily injury" or "property damage" arising out of the operation of:
> **a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or
> **b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

21

App. at 31 (bolding in original). Paragraphs 6.b and 6.c of the definition of "mobile

equipment" provide:

> **b.** Cherry pickers and similar devices mounted on automobile or
> truck chassis and used to raise or lower workers; and
>
> **c.** Air compressors, pumps and generators, including spraying,
> welding, building cleaning, geophysical exploration, lighting
> or well-servicing equipment.

*Id.* at 40 (bolding in original). This language shows that Carolina's policy excludes

coverage for accidents arising out of the operation of a pump.[11]

We acknowledge that the amended-complaint allegations together with the

extrinsic letters allow a reasonable inference that Metz's pumping fracking water

released fumes, later ignited by his cigarette lighter. All agree that Metz operated the

pump to transfer the fracking water from the well site's tanks into his trailer's tank.

Further, any fumes released during this loading operation would have been released

because of the pump's operation. But the above policy exclusion for operations

---

[11] Burlington argues that the pump-operation exclusion cannot apply unless the pump is permanently attached to a self-propelled vehicle. To get there, Burlington asserts that paragraph 6.c. must be read subject to this earlier language in paragraph 6: "Vehicles not described in Paragraph **1., 2., 3.** or **4.** above, maintained primarily for purposes other than the transportation of persons or cargo. But self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment' but will be considered 'autos[.]'" App. at 40 (bolding in original). But this position disregards the policy's plain language excluding accidents "arising out of the operation of . . . [a]ny *equipment listed* in Paragraph[ 6.c.]" *Id.* (emphasis added). Pumps are listed in paragraph 6.c. And paragraph 6.c. is not fettered to an "attached to" requirement. So the pump qualifies for the operations exclusion. *See Fed. Ins. v. Tri-State Ins.*, 157 F.3d 800, 802–03 (10th Cir. 1998) (interpreting an identical exclusion and concluding that "it excludes any injuries that 'arise out of' equipment *listed* in either paragraph 6.b. or 6.c.[,]" such as pumps).

applies, so Carolina had no duty to defend. *See Lawrence v. State Farm Fire & Cas. Co.*, 2006 WY 56, ¶ 16, 133 P.3d 976, 982 (Wyo. 2006) (imposing no duty to defend after finding that the negligent acts "fell squarely within an exception to the insurance coverage at issue").

The district court abused its discretion by granting Burlington's Rule 59(e) motion to impose on Carolina a duty to defend. As we read its cases, the Wyoming Supreme Court has not allowed consideration of extrinsic evidence in evaluating the duty to defend. Further, even if it did, the extrinsic evidence on which the district court relied to reverse its earlier ruling does not show use of an auto, and even if it did, the use (operation of a pump) is excluded from coverage. We thus reverse on this issue, which requires that we also reverse the district court's order ordering Carolina reimburse Burlington for half its defense costs.

## IV. Duty to Indemnify

We next turn to the issue of which insurer has a duty to indemnify RW Trucking and Metz. We apply the law of Wyoming as the forum state "with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007) (citing *Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 869 (10th Cir. 1993)). Neither party contends that we should apply the law of a different state to this issue, so we do not engage in a choice-of-law analysis.

## A. Carolina Does Not Have a Duty to Indemnify Its Insureds for the Accident.

The duty to defend is broader than the duty to indemnify. *First Wyo. Bank*, 860 P.2d at 1097. The duty to defend applies even when an insured has a mere potential for policy coverage, but the duty to indemnify applies only when an insurer is responsible to cover its insured's liability. *See id.* So, because Carolina did not have a duty to defend RW Trucking and Metz, it cannot owe them a duty to indemnify. *See* 14 Steven Plitt et al., *Couch on Insurance* § 200:3 (3d ed., Dec. 2019 update) ("[B]ecause the duty to defend is broader than an insurer's duty to indemnify, if a court determines that there is no duty to defend, the insurer will not have a duty to indemnify."). We thus affirm the district court on this issue.

## B. Burlington Has a Duty to Indemnify Its Insureds for the Accident.

Burlington's policy provides that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[]" and "will have the right and duty to defend the insured against any 'suit' seeking those damages." App. at 173. The policy covers bodily injury "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period. *Id.* "Coverage territory" means the United States. *Id.* at 185. Burlington's policy has an exclusion for aircraft, auto, or watercraft:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

24

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

*Id.* at 176. The policy defines "auto" as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." *Id.* at 184.

The insurers' facts proffered in their summary judgment motions align with the allegations from Garza's complaints. The insurers agree that the fire and Garza's injuries occurred because Metz ignited fumes by flicking a lighter. They also agree that this act violated the no-smoking policies in place by RW Trucking and Devon. The insurers dispute only whether Metz was still pumping fracking water when he flicked his lighter. But this is immaterial. Even if Metz was still pumping fracking water, the fire arose from the cigarette lighter, not from any use of an auto. The fire was not "the natural and reasonable incident or consequence" of Metz's use of his tractor-trailer in pumping fracking water. *Worthingon*, 598 P.2d at 807. So Burlington's auto exclusion does not apply. Burlington's policy is "a general comprehensive liability contract, which covers every conceivable liability to which [RW Trucking and Metz] may be subjected." *Id.* In this circumstance, Burlington owed a duty to indemnify RW Trucking and Metz.

Further, even assuming that the accident somehow arose out of the use of an auto (Metz's pumping fracking water),[12] Burlington still would be liable under its policy exception to its auto exclusion:

> **(5)** "Bodily injury" or "property damage" arising out of:
>
> > **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
> > **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

App. at 176 (bolding in original). Paragraphs f.(2) and f.(3) of the definition of "mobile equipment" provide:

> **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
> **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

*Id.* at 186 (bolding in original). So even if Burlington could show that Garza's injury arose out of the use of an auto (fumes from operation of the pump), Burlington's exception to the auto exclusion for pump operation would apply, leaving Burlington with a duty to indemnify.

The district court therefore correctly ruled that Burlington has a duty to indemnify its insureds for Garza's injury. We affirm on this issue.

---

[12] In the district court, Burlington argued that "fumes were released into the air by the process of loading the fracking water into the tractor trailer." App. at 651.

## V.      Voluntary Payment

Finally, we examine whether Carolina paid to settle Garza's claims as a volunteer. We again apply Wyoming law "with the objective of obtaining the result that would be reached in state court." *Butt*, 477 F.3d at 1179 (citation omitted).

The Wyoming Supreme Court has recognized the voluntary-payment doctrine as a defense to an insurer's claim for legal, or equitable, subrogation. *Commercial Union Ins. v. Postin*, 610 P.2d 984, 987 (Wyo. 1980). The *Postin* court summarized the doctrine as follows:

> "While the right of subrogation is not dependent upon legal assignment, or upon contract, agreement, stipulation, or privity between the parties to be affected by it, the person who pays the debt must not be a mere volunteer, for the payment must have been made under compulsion, or for the protection of interest of the person making it in discharge of an existing liability which must be fully satisfied. Hence, an insurer which pays a loss for which it is not liable thereby becomes a mere volunteer, and is not entitled to subrogation, in the absence of an agreement therefor."

*Id.* at 987 (emphasis and footnote omitted) (quoting *Couch on Insurance* § 61:52, at 269–70 (2d ed. 1959)). The Wyoming Supreme Court further noted "that one was not a volunteer who, in good faith and under the reasonable belief that it is necessary for his protection," made an unnecessary payment. *Id.* at 990 (citing *Wyo. Bldg. & Loan Ass'n v. Mills Constr. Co.*, 269 P. 45, 49–50 (Wyo. 1928)). Whether a payment is voluntary depends on the particular case's facts, but the presumption is *against* voluntariness. *See N. Utils. Div. of K N Energy, Inc. v. Town of Evansville*, 822 P.2d 829, 835–36 (Wyo. 1991) (citing *Weir v. Fed. Ins.*, 811 F.2d 1387, 1394 (10th Cir. 1987); *Emp'rs Mut. Fire Ins. v. Piper*, 335 S.W.2d 925 (Ky. 1960)); *accord* 16

27

Steven Plitt et al., *Couch on Insurance* § 223:26 (3d ed., Dec. 2019 update) ("[P]ublic policy supports a narrow interpretation of the insurer's 'volunteer' status; hence, a liberal application in favor of finding that the insurer who pays is entitled to subrogation. Accordingly, any doubt as to the applicability of this principle is construed in favor of the insurer and against a finding that the insurer occupied a volunteer status." (footnotes omitted)).

Though Wyoming recognizes the voluntary-payment doctrine, it has not applied it in our context: where two insurers have jointly settled claims against their joint insured under a mutual reservation of rights. Accordingly, we must predict whether the Wyoming Supreme Court would apply the doctrine under such facts. *See MTI, Inc. v. Emp'rs Ins. Co. of Wausau*, 913 F.3d 1245, 1249 (10th Cir. 2019) (providing that, in the absence of binding decisions from the forum state's courts, a federal court sitting in diversity should predict how the state's highest court would rule (citing *Carl v. City of Overland Park*, 65 F.3d 866, 872 (10th Cir. 1995)).

We doubt that the Wyoming Supreme Court would apply the voluntary-payment doctrine here. First, the *Postin* court's justification for the doctrine, adopted from a Northern District of Mississippi court, does not support the doctrine's application in this context:

> "The basic purpose of courts, as far as civil cases are concerned, is to extend aid to those who have not been able by lawful means to aid themselves, and relief is not available to those who have neglected to take care of their interests. If an unjust demand is made upon a party for that which he does not owe, when he knows or ought to know all the facts, he must avail himself of the means the law affords and resist the demand."

28

*Postin*, 610 P.2d at 988 (quoting *Greenville Shipbuilding Corp. v. Hartford Accident & Indem. Co.*, 334 F. Supp. 1228, 1237 (N.D. Miss. 1971)). Carolina did not neglect to take care of its interests. Though Carolina believed its policy did not provide coverage for Garza's injuries, its situation is unlike that in *Postin*. There, the insurer admitted on appeal that it had known that the roof collapse was excluded from coverage under its policy as resulting from a latent or inherent defect. 610 P.2d at 991. The Wyoming Supreme Court treated the insurer's payment as voluntary, because the insurer had paid not doubting its policy exclusion but trying to avoid costs from further collapse of the roof. *Id.* at 985–86.

Unlike the insurer in *Postin*, Carolina "continue[d] to review the coverage issues[,]" after receiving multiple letters from RW Trucking, Burlington, and Metz demanding that it provide a defense. App. at 811, 813. And Carolina paid into the settlement only under a mutual reservation-of-rights agreement with Burlington "to seek reimbursement/contribution/subrogation/indemnity, etc. from the other[.]" *Id.* at 1023. Further, in light of Burlington's adamant belief that Carolina's policy covered the accident, the demand that Carolina pay was not unjust.

Second, declining to apply the voluntary-payment doctrine in these circumstances furthers Wyoming's strong public policy favoring settlement. *See, e.g.*, *Haderlie v. Sondgeroth*, 866 P.2d 703, 711 (Wyo. 1993) ("A strong public policy has always existed in Wyoming favoring settlement of litigation." (citing *Coulter, Inc. v. Allen*, 624 P.2d 1199, 1202–03 (Wyo. 1981); *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27 (Wyo. 1983))). Carolina and Burlington settled Garza's claims,

29

ending his suit, with the mutual understanding that they would later determine liabilities. They sought to sort their respective liabilities in a declaratory-judgment action. Imposing the voluntary-payment doctrine here may well have forced Garza to litigate his claims to a jury verdict.

Third, law after *Postin* has deemed the voluntary-payment doctrine inapplicable when settling insurers have mutually reserved their rights. For instance, the current edition of *Couch on Insurance* relies on cases for its proposition that "[w]hether an insurer's contribution to settlement constitutes a waiver or estoppel [of its ability to assert its right of subrogation] depends on whether the insurer reserved its rights." 16 Steven Plitt et al., *Couch on Insurance* § 224:164 (3d ed., Dec. 2019 update). Waiver or estoppel—including the voluntary-payment doctrine—does not apply when "the insurer unambiguously informed the additional insured that it intended to fund the settlement without prejudice to its right to seek reimbursement." *Id.* In *Postin*, the Wyoming Supreme Court heavily relied on *Couch on Insurance*, which leads us to believe that it would rely on this language too. Further, Mississippi state law (on which *Postin* relied to explain the doctrine) states that a mutual agreement between insurance companies to litigate liabilities between themselves after settling a lawsuit precludes application of the voluntary-payment doctrine. *See Genesis Ins. v. Wausau Ins.*, 343 F.3d 733, 736 (5th Cir. 2003) (applying Mississippi law).

For the above reasons, we believe that the Wyoming Supreme Court would not apply the voluntary-payment doctrine here. Carolina is thus entitled to reimbursement

30

by Burlington of the $375,000 it contributed to settle Garza's suit. The district court misapplied the law in its original judgment in assuming *Postin* precluded Carolina's subrogation claim and thus abused its discretion in denying Carolina's Rule 59(e) motion on the issue. We reverse on this issue.

## CONCLUSION

For the above reasons, we reverse the district court's rulings on the duty-to-defend and voluntary-payment issues and affirm its ruling on the duty-to-indemnify issue. We remand with the instruction that the district court vacate its judgment granting Burlington reimbursement of half its defense costs.